U.S. DISTRICT COURT FILED OCT - 7 2014 WP S.D. OF N.Y.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KIMIEKO HUZZIE,

Plaintiff,

-against-

SPADARO REAL ESTATE LTD.; KATHLEEN SPADARO; and KYOICHI WATANABE,

Defendants.

Case No.: 14 Civ. ______

**COMPLAINT**

**JURY TRIAL DEMANDED**

**ECF CASE**

JUDGE BRICCETTI

**14 CIV. 8070**

Plaintiff Kimieko Huzzie, by and through her attorneys, Emery Celli Brinckerhoff & Abady LLP, for her Complaint alleges as follows:

**INTRODUCTION**

1. This is a civil rights action seeking damages and injunctive relief for Defendants' violations of Plaintiff's rights under the federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), the Civil Rights Act of 1866 (42 U.S.C. § § 1981, 1982), and the Westchester County Fair Housing Law, § 700.21.

2. Plaintiff Kimieko Huzzie, an African-American woman, faced illegal discrimination based on her race and her Section 8 housing assistance voucher when she sought to rent an apartment in Harrison, New York. She was looking for an apartment in a safe neighborhood, where her two children could attend good schools, for over a year. She thought she found such an apartment at 44 Holland Street #2. But Defendants denied her rental offer of $100 above the asking price.

3. Defendants claimed that her poor credit was to blame, though Ms. Huzzie is gainfully employed and has always paid her rent on time, as her landlord of six years explained in his recommendation letter. But recordings by trained fair housing testers revealed that white testers with problem credit were told a credit report was not required; a reference from their landlord and proof of employment was enough. The landlord was not concerned about credit, the broker explained, because "things happen with credit reports." And, not surprisingly, the white testers were never told that they had to pass a criminal background check, as Ms. Huzzie was.

4. Plaintiff was also discriminated against because she uses a rental subsidy known as a Section 8 housing voucher to pay a portion of her rent. Though Westchester County law prohibits landlords and real estate brokers from discriminating against Section 8 voucher holders, the broker admitted that the landlord was "hesitant" to rent to a tenant with Section 8.

5. This action seeks to (a) compensate Ms. Huzzie for the emotional and financial damages and lost housing opportunity she has suffered; (b) enjoin Defendants from discriminating in the rental of 44 Holland Street #2 and from discriminating against future rental applicants on the basis of their race or income source.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 2201 and 42 U.S.C. § 3613. This Court has supplemental jurisdiction over the Westchester County law claim pursuant to 28 U.S.C. § 1367.

7. The acts complained of occurred in the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b) because all the Defendants reside in the District and a substantial part of the events giving rise to the claim occurred in the District.

## THE PARTIES

8. Plaintiff Kimieko Huzzie is a citizen of the United States and currently resides in Yonkers, New York.

9. Defendant Spadaro Real Estate Ltd. is a New York corporation with offices located at 148 W. Boston Post Rd, Mamaroneck, New York, 10543. At all relevant times, Defendant Spadaro Real Estate Ltd. is a licensed real estate company, and, among other things, brokers the rental of apartments in Westchester County.

10. Defendant Kathleen Spadaro is the licensed corporate broker for and owner of Spadaro Real Estate Ltd. Her office is at 148 W. Boston Post Rd, Mamaroneck, New York, 10543-0468.

11. Defendant Kyoichi Watanabe is the owner of the two-family home located at 44 Holland Street, Harrison, New York, which contains unit #2 ("the Unit"), who resides in Mamaroneck, New York.

12. At all times relevant to the Complaint, Defendants Spadaro Real Estate Ltd. and Kathleen Spadaro acted on behalf of the owner of the Unit, Defendant Watanabe, as his rental broker.

## JURY DEMAND

13. Plaintiff demands trial by jury in this action.

## FACTUAL ALLEGATIONS

14. Plaintiff Kimieko Huzzie is a thirty-two year old African American mother of two children, ages 12 and 14.

15. She and her family live in a fourth-floor walkup apartment in southwest Yonkers, New York.

16. Plaintiff works full time as a store detective at the grocery chain Stop & Shop, earning $15.50 an hour.

17. Plaintiff is enrolled in the New York State Homes and Community Renewal Statewide Housing Choice Section 8 Voucher Program ("Section 8"), which she uses to pay a portion of her family's rent. Pursuant to the Section 8 program, Plaintiff pays 30% of her income, roughly $700 per month, toward her rent, and the voucher covers the remainder.

18. In July 2013, Plaintiff approached the Enhanced Section 8 Outreach Program, Inc. ("ESOP"), a nonprofit operating in Westchester for the past twenty years, to help her find a three-bedroom apartment in a safer neighborhood than Yonkers with better schools. ESOP assists families who participate in Section 8 to find housing in economically- and racially-integrated neighborhoods and administers their Section 8 voucher rent payments throughout their lease.

19. Nearly all of ESOP's clients are black or Latino, a fact that is well known by real estate brokers in Westchester.

20. According to the federal Department of Housing and Urban Development, in 2013, 80% of the Section 8 Housing Choice Voucher holders in Westchester County were minority, and 70% of these minority families lived in predominately minority tracts.

21. ESOP immediately began searching for three-bedroom apartments for Ms. Huzzie's family within the enhanced Section 8 price ranges. After over a year of searching, it finally located an apartment at 44 Holland Street (hereinafter referred to as "the Unit") in Harrison, New York in August 2014.

22. Harrison schools far outrank those in southwest Yonkers.

23. According to data from the 2010 Census, Harrison's population is nearly 85% white, with African Americans making up 1.1% and Latinos 9.8%. By contrast, southwest Yonkers, where Ms. Huzzie currently lives, has a more than 70% minority population.

24. The Unit in Harrison met Ms. Huzzie's needs perfectly. It is a spacious three-bedroom apartment in a two-family house, with ample front and back yards, a large eat-in kitchen, a huge living room, family-style laundry in the basement, and available street parking.

25. The apartment offered a dramatic improvement over the Huzzie family's current residence, where they have lived for six years, which is a small fourth-floor walkup apartment in need of repair, with no laundry, no yard, and no parking.

26. On August 28, 2014, ESOP's broker showed Ms. Huzzie the Unit. The next day, she and ESOP authorized the broker to make an offer to rent the apartment for $2,400 per month to begin September 15, terms that the broker stated would be acceptable to the landlord.

27. ESOP sent its broker their pre-lease documents, which included a Request for Tenancy Approval, a form required by Section 8. The broker was aware that Ms. Huzzie was African American and that she received Section 8 assistance.

28. After those documents were submitted, the Unit owner, Defendant Kyoichi Watanabe, through his real estate broker, Defendant Kathleen Spadaro of Defendant Spadaro Real Estate, informed ESOP for the first time that Ms. Huzzie must provide a credit report, a criminal background check, and references.

29. These demands were made only after Defendants became aware that Ms. Huzzie was an African American who would pay for the Unit in part with a Section 8 voucher.

30. ESOP provided all of these documents on September 9, 2014. Ms. Huzzie's employer verified her employment and her salary. Ms. Huzzie's current landlord affirmed that Ms. Huzzie paid her rent on time, kept her apartment in good order, and never caused any problems. The background check showed that Ms. Huzzie had no criminal record, had never been evicted, and had never been involved in a housing court proceeding. Ms. Huzzie's credit report showed a low score.

31. Neither ESOP nor Ms. Huzzie heard any response from Defendants Watanabe or Spadaro.

32. After over a week with no response from the Defendants, on September 18, 2014, ESOP's director, Beverly L. Bell, visited Ms. Spadaro's office to determine the status of Ms. Huzzie's offer.

33. Concerned that Ms. Huzzie may be being discriminated against on the basis of her race and her source of income, Ms. Bell had contacted a fair housing group, the Fair Housing Justice Center ("FHJC"), the day before. The FHJC gave her a recorder, which she wore during her September 18, 2014 meeting with Ms. Spadaro and another Spadaro agent, Lawrence Duignan.

34. Mr. Duignan is listed as an agent on Spadaro Real Estate's website. He acted on behalf of Ms. Spadaro and Spadaro Real Estate to list and show the Unit, and stated that he had direct contact with Unit owner, Defendant Watanabe. He was aware of Ms. Huzzie's offer for the Unit.

35. During their conversation, which was recorded, Ms. Spadaro stated that Mr. Watanabe was "hesitant" about renting to a tenant receiving a Section 8 voucher. She admitted that she and Mr. Watanabe had had a specific conversation about the fact that Ms.

Huzzie received Section 8 rental assistance. Mr. Duignan added that Mr. Watanabe had "said no" to tenants with Section 8 vouchers in the past.

36. Ms. Spadaro identified no other deficiencies with Ms. Huzzie's offer, only noting that another offer had allegedly been made for the full asking price of $2,600, and that the landlord was considering installing a dishwasher and raising the price by $75, to $2,675.

37. At no time did Ms. Spadaro or Mr. Duignan ever mention Ms. Huzzie's credit or state that the landlord looked closely at potential tenants' credit. Ms. Spadaro simply said that the landlord was looking for a family who would be "making their home," and who could "get along" with the neighbors.

38. Four days later, on September 22, 2014, ESOP increased its rental offer to $2,625, or $2,700 if Mr. Watanabe installed a dishwasher. This offer thus exceeded the price Ms. Spadaro allegedly offered to the other potential tenants: $2,600 without a dishwasher, $2,675 with one.

39. Just a few hours later, however, ESOP received an email from Ms. Spadaro stating that "the owner has rejected the [submitted] offer," citing Ms. Huzzie's "low credit score."

40. Ms. Huzzie was never given an opportunity to explain that her low credit score related to a car accident in 2008 that had left her temporarily disabled and unable to work. She was never able to explain that she had continued to pay rent during that period, or that, since then, she had purchased a car in 2010 that she paid off in full within two years. Indeed, she had never even been given a formal rental application.

41. At the same time, the FHJC arranged for trained white testers to visit the Unit while wearing recording devices.

42. During recorded tests on September 19 and 25, 2014, the white testers experienced very different treatment from Spadaro agents than Ms. Huzzie received. The white testers were immediately given rental applications from Spadaro. When the testers told Mr. Duignan that they had bad credit, he told them that a credit check was not even required. He added that if the testers had bad credit, "just tell us and give us a reason." He continued: "[I]f your income is good, and if your reference from your landlord is good, that's really the main thing."

43. While the Spadaro agent encouraged the white testers to apply—telling them the landlord was "looking for nice people [and] you are nice people"—he never asked them to produce a credit report.

44. The white testers were also never asked to submit to a criminal background check.

45. On September 29, 2014, Mr. Duignan contacted the white testers to tell them that the landlord planned to install a dishwasher and that the apartment was still available for $2,600—a full week after Ms. Huzzie's offer of $2,700 had been rejected.

46. That same day, Ms. Spadaro emailed Ms. Bell at ESOP to inform her of a possible available apartment in subsidized housing in Mamaroneck. Because the area has a population that is 46% minority, it did not qualify for ESOP's program which is limited to less racially segregated lower poverty areas. Ms. Bell responded that Ms. Huzzie was not interested.

47. Ms. Spadaro steered Plaintiff away from a predominately white neighborhood to one with a 46% minority population though, on information and belief, Ms. Spadaro and Spadaro Real Estate Ltd. knew of other three-bedroom apartments in Plaintiff's price range in areas similar to Harrison.

48. As of October 6, 2014, the Unit remains listed for $2,600 on Spadaro Real Estate's website. Upon information and belief, the Unit remains available, and no tenants have been found to occupy it.

49. In summary, Ms. Huzzie was required to provide a criminal background check, while the white testers were not. Ms. Huzzie was told that her low credit disqualified her from the apartment—despite the guaranteed rent provided by ESOP—while the white testers were told that poor credit would not matter. Ms. Huzzie never received a rental application, while the white testers were given rental applications and encouraged to apply. And the white testers were told that the apartment was available, with a dishwasher, for $2,600—a week after Ms. Huzzie's offer of $2,700 for the Unit was rejected.

50. As a result of the conduct described above, Plaintiff suffered emotional and financial injuries by being denied the right to rent the apartment of her choice.

51. As a result of the conduct described above, Plaintiff has suffered a loss of housing opportunity by being denied the right to rent the Unit.

**COUNT I**
**Fair Housing Act**
**(42 U.S.C. § 3601 *et seq.*)**

52. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

53. The Unit is a "dwelling" as defined 42 U.S.C. § 3602(b).

54. The Fair Housing Act provides that it is illegal: "To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(a).

55. Defendants violated this provision by refusing to rent the Unit to Plaintiff because of her race.

56. Defendants Spadaro Real Estate Ltd. and Kathleen Spadaro further violated this provision by steering Plaintiff away from a predominately white neighborhood to one with a 46% minority population.

57. The Fair Housing Act further provides that it is illegal: "To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).

58. Defendants violated this provision by imposing additional terms and conditions on Plaintiff than they did to similarly-situated whites because of her race.

59. The conduct of Defendants was willful, intentional, and in reckless disregard for Plaintiff's civil rights.

60. Plaintiff is an aggrieved person as defined by the FHA, 42 U.S.C. § 3602(i).

61. As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has sustained damages.

**COUNT II**
**Civil Rights Act of 1866**
**(42 U.S.C. §§ 1981, 1982)**

62. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

63. The Civil Rights Act of 1982 provides: "All citizens of the United States shall have the same right . . . as is enjoyed by white citizens thereof to . . . purchase, lease, sell,

hold, and convey real . . . property." 42 U.S.C. § 1982. Section 1981 of the Civil Rights Act of 1866 provides: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens."

64. Defendants violated the Civil Rights Act of 1866 by engaging in the foregoing discriminatory conduct and refusing to rent to Plaintiff on the basis of her race.

65. The conduct of Defendants was willful, intentional, and in reckless disregard for Plaintiff's civil rights.

66. Plaintiff has been injured by Defendants' discriminatory conduct and has suffered damages as a result.

**COUNT III**
**Westchester County Fair Housing Law**
**(Section 700.19 *et. seq.*)**

67. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

68. Section 700.21 of the Westchester County Code of Ordinances states in relevant part: "It shall be an unlawful discriminatory real estate practice for anyone, including, but not limited to, an owner, lessor, lessee, sub-lessee, assignee, real estate broker, real estate salesperson or management agent or other person . . . or any agent or employee thereof . . . [t]o refuse to . . . rent, lease, sublease, assign, transfer, negotiate for, or to refuse to approve or enter into a transaction involve or otherwise to deny to or withhold from any person . . . such a housing accommodation because of that persons [sic] actual or perceived group identity."

69. "Group identity" is defined in relevant part as "the race, color, . . . or . . . a person's source of income." Westchester Cnty. Code of Ordinances § 700.20(H).

70. "Source of income" is defined in relevant part as "lawful, verifiable

income derived from . . . any form of federal, state or local public assistance or housing assistance, grant, or loan program, including the federal housing subsidy known as 'Section 8.'" Westchester Cnty. Code of Ordinances § 700.20(V).

71. The Unit is a housing accommodation subject to the provisions of the ordinance that relate to real estate practices on the basis of source of income, because the owner owns or has ownership interest in more than one housing accommodation for six or fewer families. Westchester Cnty. Code of Ordinances § 700.20(V)(3). None of the exceptions detailed in § 700.20(V) apply.

72. Defendants violated the Westchester Cnty. Code of Ordinances § 700.21 by engaging in the foregoing discriminatory conduct, including by refusing to rent the Unit to Plaintiff due to her source of income.

73. The conduct of Defendants was willful, intentional, and in reckless disregard for Plaintiff's civil rights.

74. Plaintiff has been injured by Defendants' discriminatory conduct and has suffered damages as a result.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a) Declaring that Defendants' discriminatory practices violate the Fair Housing Act, as amended, 42 U.S.C. § 3601 *et seq.*, the Civil Rights Act of 1866, and the Westchester County Code of Ordinances § 700.19 *et seq.*;

b) Enjoining Defendants, Defendants' agents, employees, and successors, and all other persons in active concert or participation from:

i. Denying or withholding housing, or otherwise making housing unavailable on the basis of race or source of income;

ii. Discriminating in the terms, conditions, or privileges of rental because of race or source of income;

iii. Coercing, intimidating, threatening, or interfering with any person in the exercise or enjoyment of any right granted or protected by the Fair Housing Act; and

iv. Aiding, abetting, inciting, compelling, or coercing the doing of any of the acts forbidden by the Westchester County Code of Ordinances § 700.19 *et seq*;

c) Enjoining Defendants to require them to adopt nondiscriminatory rental policies and practices to prevent discrimination in the future;

d) Awarding such damages to Plaintiff as will fully compensate for any loss of rights, loss of housing opportunity, financial losses, as well as for the humiliation, embarrassment, and emotional distress suffered due to Defendants' discriminatory conduct;

e) Awarding punitive damages to Plaintiff;

f) Awarding Plaintiff reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

g) Granting Plaintiff such other further relief as may be just and proper.

Dated: New York, New York
October 7, 2014

EMERY CELLI BRINCKERHOFF &
ABADY LLP

By: ____________________
Debra L. Greenberger
Diane L. Houk
Alison Frick
600 Fifth Avenue, 10th Floor
New York, New York 10020
(212) 763-5000
*Attorneys for Plaintiff*